CHARLES E. FOSTER and Another, Respondents, *v.* JOHN W. BOOKWALTER, Appellant.

*Agency — declarations of the alleged agent as to payment of the cost of procuring a patent — change of the ownership — payment of prior legal expenses — a bill rendered is not conclusive as to the amount charged.*

Agency cannot be established by the declarations of an agent; it requires something more than the written assertion of an alleged agent to establish the fact that he is such agent.

Where a person agrees to assign letters patent on certain discoveries and inventions and also to assign the improvements which he may thereafter make or discover, he is not interested in the question of obtaining letters patent on such improvements, and although he may have to make an application for the patent on such improvements discovered by him, there is no agreement on his part that the letters patent shall be procured at his expense.

Where there is a change of condition in the ownership of patents and new interests are created, such new interests cannot be charged with legal expenses under a retainer by the former owner thereof without an express retainer being given therefor by the new owners.

*Semble,* that a party is not bound by a bill rendered in respect to the amount of charges therein when he brings a suit thereon.

Statement as to the form in which a case on appeal should be made up.

APPEAL by the defendant, John W. Bookwalter, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 14th day of September, 1893, upon the report of a referee.

*Geo. Hoadly,* for the appellant.

*F. H. Wilson,* for the respondents.

VAN BRUNT, P. J.:

This action was brought by the plaintiffs, who were solicitors in patent cases and attorneys and counselors at law residing and doing business in the city of Washington, D. C., to recover from the defendant the sum of $8,555.44 and interest, the balance alleged to be due for certain professional services which they alleged that they had rendered to the defendant relative to applications for and the obtaining of certain patents and matters relating thereto.

Annexed to the complaint was a bill of particulars setting out the services rendered and the charges made therefor in detail.

The answer of the defendant admitted the performance of certain of the professional services mentioned in the bill of particulars annexed to the complaint, and in respect to these denied, upon information and belief, their value. The answer further alleged payment for said services, and denied that any other of the services or disbursements described in the bill of particulars annexed to the complaint were rendered to or paid for him, or at his request, and also denied all liability therefor.

An amended and supplemental answer was served by the defendant, in which he repeated the allegations of his original answer, and alleged certain payments which were in full of all services up to certain dates. The answer further admitted the rendition of certain

# 354 FOSTER v. BOOKWALTER.

services, and then pleaded a tender and a payment of the same into court.

The case coming up for trial at a Circuit Court for the city and county of New York, a motion was made upon the pleadings that the same be referred, and a reference was ordered and a trial had before the referee, who reported in favor of the plaintiffs for the sum of $7,885.44, with interest. A judgment having been entered upon said report, from such judgment the present appeal is taken.

The only question which is presented upon this appeal is whether the conclusion at which the referee arrived is against the weight of evidence. It is admitted that the tender made upon the part of the defendant was insufficient to liquidate all the claims which the plaintiffs had against the defendant, and that the referee was justified in finding that a considerable amount was due from the defendant for professional services rendered by them to him. But it is claimed upon this appeal that there was no evidence justifying the greater part of the recovery allowed, such services having been rendered to a company who had become the assignee of the defendant in respect to the patents which formed the subject-matter of the original retainer of the plaintiffs by the defendant.

A record has been presented upon this appeal of over 3,500 folios, and so-called briefs have been submitted upon the part of the appellant 119 pages in length, and upon the part of the respondents fifty-seven pages in length. In view of this plethoric condition of the record, it is manifest that within the limits of this opinion mere general statements only can be indulged in tending to disclose the reasons which bring the court to the conclusion at which it has arrived. There is, comparatively speaking, very little oral testimony contained in this record, the most of it being made up of correspondence between the defendant and the plaintiffs and the defendant's alleged agent, and the dignity of the contentions of the appellant almost necessarily depends upon the conclusions arrived at from a reading of this correspondence.

It is to be observed that the referee has without doubt based his judgment very largely upon the fact that he considered that the evidence established that W. E. Lown was the agent of and authorized to speak for the defendant. In this we think the referee

manifestly erred. There is no evidence in this case tending to show that Lown was the agent of the defendant except the assumptions of the plaintiffs. It is undoubtedly true that the plaintiffs sent communications to Lown which they expected the defendant to see. But it is also equally true that in none of the correspondence or the assertions of the defendant, as specifically testified to, is there any recognition upon the part of the defendant of the right of Lown to bind him in any particular. Lown swears that he was not the agent of Bookwalter, the defendant, and it requires something more than the written assertions of Lown, if it is claimed that he made them, to furnish evidence that he (Lown) was the agent of the defendant. Agency cannot be proved by the declarations of an agent. And it is probable that this erroneous view of the relations which the evidence established as existing between Lown and the defendant had great weight with the referee in bringing him to the conclusion at which he arrived. And we might very well say, without considering any other question in the case, that this error having entered into the judgment of the referee the judgment must necessarily be reversed.

It may, perhaps, be not without profit that we should consider a little more in detail a few of the peculiar features of this case. It appears, as has been above stated, that the plaintiffs were co-partners doing business as solicitors in patent cases and counselors at law in the city of Washington, and had, prior to May, 1888, been employed by the defendant to secure patents for various inventors, the services being charged to him personally and paid by him, and that the transactions out of which this action grew commenced with a contract dated the 19th of March, 1888, but executed prior to that time, between the defendant Bookwalter and Lown and Norris, whereby they undertook to secure and develop certain inventions of which the defendant Bookwalter and one Robert were the owners, an interest in the inventions owned by Robert having been assigned by him to a French corporation. This agreement also contained a provision that they were to organize a corporation for the purposes above mentioned and for carrying on the business of manufacturing iron and steel under these patents. And Bookwalter agreed, "without express consideration other than the several provisions of this contract, to convey and assign to said company, to be incorporated

as aforesaid, the letters patent for the United States for his discoveries and inventions, as aforesaid, together with all improvements he may hereafter make or discover."

Following this agreement, on the 12th of March, 1888, these three gentlemen upon the one part made a contract with Robert and the French corporation upon the other part, by which the latter, upon certain conditions, granted to the former the right to certain improvements for the United States in the art of making and manufacturing iron, steel and castings, and agreed to convey to a person to be nominated by the defendant, letters patent to be issued in the United States upon them; and the defendant Bookwalter agreed to grant to Robert and the French corporation the exclusive right to use in continental Europe certain improvements in the art of making iron, steel and castings patented by him.

On the 26th of May, 1888, the plaintiffs received a letter from Thompson & Boult, of London, with drawings on an application for a patent in the name of Robert, and also for an application in the names of Walrand & Delattre, with a request to get the applications on file with the least possible delay, and that Mr. Bookwalter, upon his return to the United States, would call and settle with them directly for their fees. These instructions were confirmed by the defendant in a letter to the plaintiffs dated New York, June 21, 1888; and the plaintiffs proceeded to carry them out, and rendered services in connection therewith. On the 6th of December, 1888, in pursuance of the agreement of the 12th of March, 1888, above referred to, Robert and the French corporation conveyed to the defendant Bookwalter, who was his own nominee, the interest in Robert's inventions described in the foregoing contract. On the 18th of December, 1888, in pursuance of the provisions of the contract of March 19, 1888, the Bookwalter Steel and Iron Company was organized, of which the plaintiffs had notice. During all this period of time the plaintiffs had been rendering services to Bookwalter in reference to these applications for patents. On the 22d of March, 1889, Norris assigned one-tenth of his interest in the enterprise to the plaintiffs; and on the ninth of April all of those interested in these patents and inventions, to wit, the defendant Bookwalter, Lown, Norris, and the plaintiffs Foster & Freeman, made a proposition to convey to the Bookwalter Steel and Iron Com-

pany their interests in the patents and inventions under the above-mentioned contract in consideration of the issue of certain stock of the corporation. This proposition was accepted by the corporation in April, 1889, and on the seventh of May the stock was issued in bulk to the associates jointly in payment of the transfers. On the twenty-second of June Bookwalter transferred to the company by a formal deed of assignment the letters patent in the United States issued upon the Walrand & Delattre inventions of which Robert had been the assignee, and also the patents issued in the United States for Robert's invention and his own ; and on the twenty-fifth of June the stock was reissued in separate lots according to the interests of the parties. It further appears from the evidence that Bookwalter and Lown were directors of the corporation, Bookwalter attending to the patents and Lown to the office business.

It is to be observed that the assignment to the Bookwalter Steel and Iron Company simply covered the American patents, the foreign patents still remaining the property of the defendant Book-walter ; and it is conceded upon the part of the defendant that all services rendered by the plaintiffs in respect to those patents were properly chargeable to him. It also appears from the evidence that during all this time the defendant was corresponding with the plaintiffs in respect to the question of these patents, urging diligence on their part and substantially calling the business his own, and as late as the 4th of September, 1889, urging them to " Lay aside at once all other of *my* matters," and proceed with the one referred to in the letter. Prior to the 7th of October, 1889, and to the assignment of the patents to the corporation by Bookwalter, certain interferences had been declared by the patent office in respect to the Robert patent and services had been rendered by the plaintiffs in relation thereto. On said last-mentioned day the plaintiffs wrote a letter to W. E. Lown inclosing bill against Bookwalter for all these services which had been rendered up to date of the bill in respect to those patents and interferences, in which they stated : " We presume that the charges for the interference should be made against the company, but we have had no authority to do so. Please advise us whether the company assumes the charges for the applications to be made hereafter as well as for the interference business." On the 9th of October Bookwalter wrote to the plaintiffs: " Mr.

Lown has shown me the account you have rendered to the B. S. & I. Co. Now, I find you have my personal account mixed up with it. As I desire to keep things separate, you will please make out new accounts; one confined wholly to items concerning the B. S. & I. Co., and the other, those appertaining to my matters. In my personal acct. there should be included all expenses of all applications for my patent in foreign countries, the Churn device, the Button Hook, cost of examining R. R. Tie, etc. If you will send to me personally my account so made out I will remit amt. due." On the 11th of October, 1889, the plaintiffs wrote to Lown, stating, among other things: "We also inclose to Mr. Bookwalter his accounts separated as required. As regards future charges we are willing to make them against the company, but we must have instructions to that effect from the company itself." On the twelfth of October Lown replied to this letter, stating: "I handed Mr. B. the accounts. The smaller one he took to the other office and I presume will send you a check to-day." And it further appears that Bookwalter left at the office of the company the other account. On the sixteenth of October Bookwalter wrote to the plaintiffs as follows: "Find inclosed draft for $895 in full of account rendered the 10th inst." And on the seventeenth of October the plaintiffs returned the bill receipted to Bookwalter in a letter commencing: "Your favor inclosing check to pay the inclosed receipted bill at hand, for which accept our thanks," and saying nothing about the bill which related to services for the corporation. Subsequent to this time correspondence took place between Bookwalter and the plaintiffs, and additional services were rendered both in respect to the foreign patents belonging to Bookwalter and also in respect to those which had been transferred to the corporation.

It is claimed on the part of the defendant that Bookwalter was not responsible for any of the services rendered subsequent to the transfer of the patents on the 22d of June, 1889; also, that he was not liable for any services ordered by Lown; that he was not liable for the plaintiffs' charges in respect to the interferences, and that he certainly was not liable for any services rendered subsequent to the 9th of October, 1889, when the agency was expressly terminated by the defendant. Various other points are made which it is not necessary now to consider.

Certain authorities are cited for the purpose of supporting the proposition that, in consequence of the change in the relations previously existing between all the parties, by the transfer of the patents from Bookwalter to the corporation on the 22d of June, 1889, in order that Bookwalter should be held personally liable thereafter, a further retainer should have been established. We do not think, however, that the authorities cited support the proposition contended for. They seem simply to establish the proposition that where there is a change of condition and new interests come in, the new interests cannot be charged without an express retainer, and, therefore, do not seem to have any relation to the question as to whether a retainer having been once given and apparently been continued, charges for services under such retainer may not be made.

In respect to the charges for services ordered by Lown, it seems to us that they cannot be at all sustained, because, as has been already observed, there does not seem to be sufficient evidence going to show that Lown bore such relations to the defendant as authorized him to bind the defendant by any order or contract which he might make.

It is not necessary in this connection to discuss the question as to the charges for the interferences. But it is apparent that from the 9th of October, 1889, the plaintiffs had notice from Bookwalter that their relations towards him in respect to those patents in which he had a personal interest were different from those which existed in respect to the patents which he had assigned to the company. They were distinctly notified by Bookwalter at this time that he considered those charges as against the company; although he apparently did not notice the fact that the bills were made out to him. He returns them as bills made out to him against the company, and states that his personal matters have been mixed up with the accounts rendered against the company — not that the company's accounts have been mixed up with those which had been rendered to him — and he requests a separation, and when separated he pays his personal account and leaves the other in the office of the company, of which these plaintiffs have notice. It seems to us, under these circumstances, that if the plaintiffs went on rendering these services they did so at their peril. They knew that Bookwalter

had no personal interest in any of these controversies in respect to the United States patents. They knew that he was interested in the foreign patents and in those only. They knew that he was an officer of the company, and that he was looking after these patent devices and that all he did in this respect was for the benefit of the corporation and not for himself individually.

It is urged upon the part of the plaintiffs that in the contract of the 12th of March, 1888, Mr. Bookwalter agreed to assign to the company to be formed in pursuance of that agreement, all letters patent for the United States for his discoveries and inventions, together with all improvements he might thereafter make or discover, and that he thereby undertook to assign letters patent for those improvements, and that as there was nothing to show that any other person than the defendant was to pay the expenses that necessarily preceded the granting of these letters patent, it is to be presumed that he was to pay for the same. We think this is a very forced construction of the language of the agreement. He agreed to assign the letters patent for his discoveries and inventions, and also to assign all the improvements which he might thereafter make or discover. He was not interested in the question of letters patent; he agreed to make over the improvement, and although the inventor may have to make the application for the patent, yet there was no undertaking on his part that any letters patent should be procured at his expense.

And furthermore, throughout all the correspondence, even before the 7th of October, 1889, and noticeably in the letter of that date where they admit that the interference charges should be made against the company, the plaintiffs are continually referring to the company and they are corresponding with Lown, the representative of the company, in reference to the services to be performed by them, and when they want money for the purpose of prospective disbursements they apply to Lown as the representative of the company, and they get money loaned by Bookwalter to the company and are notified by Lown that the company is short of money in consequence of the condition of the money market and that he hopes it will let up. And in the course of his examination Mr. Freeman testifies: " I said one after another, throughout a long list of items, which Mr. Chappell read to me, that they were rendered

at the request of Mr. Bookwalter, and that the amounts were reasonable; it was not always a separate request for every item; of course not; we never received such a request from one of our clients; we are requested by our clients, and especially Mr. Bookwalter requested us, over and over again, to do everything; spend any money that was necessary to carry on these cases; to fight them to the bitter end," etc. Here it was evident that Freeman had in mind that he had other clients besides Mr. Bookwalter in respect to this matter, because he associates Mr. Bookwalter with his other clients, namely, the Bookwalter Steel and Iron Company. Again, when additional counsel are engaged, it is through Mr. Lown that the engagement is made, and the payment due the counsel is made by the company, of which the plaintiffs had notice. And furthermore, when they are seeking evidence in the interference cases, they propose to get a witness employed as the engineer of the company and paid by the company, who would be valuable to the company in the giving of testimony. It was not Bookwalter that they proposed should do these things, but the company. And so throughout the whole of this transaction, certainly subsequent to the 7th of October, 1889, they are continually writing about the company's interest to Mr. Lown, with whom they have no interest in corresponding, unless they suppose that he was representing the company, because they certainly had no legal reason to suppose that he represented the defendant any more than that Mr. Bookwalter was acting for the company.

There are circumstances in this case which do not tend to impress the court with the entire ingenuousness of these plaintiffs. We find that for a number of services they had rendered bills for certain amounts. When they come to sue, they double each one of these items, and the referee finds that the original amount was a fair compensation for these services. Although a party may not be bound by a bill rendered in respect to the amount of charges therein when he brings suit, yet, unless it is plainly apparent that the services were worth the sum sued for in excess of that charged in the bill, it certainly shows a discreditable motive in enlarging the amount for the purposes of the suit.

But there is another feature in this case which certainly shows

that but little credit is to be given to any statements that these plaintiffs may make in respect to their beliefs or their intentions where their interests are involved. It appears from the plaintiffs' case that they considered themselves the personal solicitors of Bookwalter in respect to all of these patent enterprises. It also appears that they considered Mr. Lown to be Bookwalter's agent — both, therefore, bound to look after Bookwalter's interest in respect to these matters. Mr. Bookwalter became depressed in regard to the future of these enterprises; seemed to be anxious to dispose of his interest in the case, and then these plaintiffs proposed to Lown to take advantage of Bookwalter's state of mind for the purpose of getting a contract out of· him for the sale of his interests in order that the plaintiffs might make $100,000 or $200,000 out of it. And they went so far in the carrying out of this design that when the opinion of an expert who had been employed in respect to one of these patents was sent to Bookwalter, which by the omission of a word conveyed an exactly opposite impression from that which the expert intended — of which fact they were aware — they urged upon Lown that Bookwalter be permitted to remain under the impression that the opinion of this expert had been adverse to his claim, when they knew that it was in his favor, in order that they might further depress him in price as well as in feeling. Such a proposition from a solicitor in respect to the interests of his client seems to make it apparent that but little faith can be placed upon any asseveration or claim made by him. And even if there was no relation of trust between themselves and Bookwalter, they were willing to debauch his agent for the purpose of their own profit, because, according to the evidence in this case, they believed Lown to be his agent, and made this proposition of suppression to him in the hope of getting an advantageous contract out of Bookwalter.

The judgment should be reversed and a new trial ordered before another referee to be appointed in the order to be entered thereon, with costs to the appellant to abide the event.

We should not, however, dispose of this appeal without a word of commendation as to the manner in which the appellant has made up the case. He has presented to us an intelligible index — a rarity in our experience where there are any number of exhibits. He has also indicated at the top of each page the nature of

the contents thereof, thus greatly facilitating us in our examination of the testimony and exhibits, and we hope to see the good example set followed by other appellants.

FOLLETT and PARKER, JJ., concurred.

Judgment reversed, new trial ordered before another referee to be appointed in the order to be entered hereon, with costs to appellant to abide event.